Flagstar Bank, FSB,

      Case No. 10-10889

    Plaintiff,

      Hon. Sean F. Cox

v.

Mortgage Loan Specialists,
Myles D. Hubers, Michelle Renee Hubers,
and William Walter Predebon,

    Defendant.

_____/

<u>OPINION & ORDER</u>
<u>GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT, DENYING DEFENDANTS HUBERS' MOTION TO DISMISS OR TRANSFER
VENUE, AND GRANTING DEFENDANT PREDEBON'S MOTION TO DISMISS</u>

      Plaintiff Flagstar Bank, FSB ("Flagstar") filed this action against Defendants Mortgage

Loan Specialists ("MLS"), Myles Huber, Michelle Huber, and William Prebedon (collectively

"All Defendants"). Flagstar is suing MLS and the Hubers for breach of contract (count I).

Flagstar is suing All Defendants for negligent misrepresentation (count II), negligence / breach of

professional duties (count III), breach of fiduciary duty (count IV), and unjust enrichment (count

V). The matter is currently before the Court on Flagtar Bank's Motion for Summary Judgment,

Defendants Miles Hubers and Michelle Hubers' Motion to Dismiss or Transfer Venue, and

Defendant William Prebedon's Motion to Dismiss or Transfer Venue.

      The parties have briefed the issues, and on September 21, 2010, the Court held a hearing

on the motions.  For the following reasons, the Court shall GRANT in part and DENY in part

Flagstar's Motion for Summary Judgment; the Court shall DENY the Hubers' Motion to Dismiss

or Transfer Venue; and the Court shall GRANT Predebon's Motion to Dismiss.

BACKGROUND

<u>Procedural History</u>

On January 25, 2010 Flagstar filed its complaint against MLS, the Hubers, and Prebedon

in Oakland County Circuit Court.  MLS removed to this Court on March 5, 2010 (Doc. No. 1).

On March 10, 2010, the Hubers filed a joint motion to dismiss for lack of personal

jurisdiction or alternatively to transfer venue (Doc. No. 5).  The motion included supporting

declarations.

On April 5, 2010, Prebedon, acting pro se, filed a similar motion and a supporting

declaration.

Flagstar filed a response to the Hubers' motion on April 7, 2010 (Doc. No. 12), and filed

a response to Prebedon's motion on April 23, 2010 (Doc No. 20).  Both response briefs included

several exhibits.  Defendants Hubers and Prebedon filed evidentiary objections to the exhibits

(Doc. Nos. 18 & 23, respectively).

On April 20, 2010, Flagstar filed a motion for summary judgment against MLS (Doc. No.

15).  Flagstar also filed several exhibits accompanying its brief.  On May 11, 2010, MLS filed its

response brief and filed evidentiary objections to Flagstar's exhibits.

Pursuant to this Court's practice guidelines, Flagstar filed a document titled "Statement

Of Material Facts Not In Dispute In Support Of Its Motion For Summary Judgment" ("Pl.'s stmt.

of facts") (Doc. No. 31).  MLS filed a response to Flagstar's statement of facts ("MLS's counter-

2

stmt.") (Doc. No. 32).

The parties' submissions support the following facts.

<u>The Parties</u>

On March 8, 2001, Flagstar, a federally chartered bank with its principal place of business in Troy, Michigan, entered into a Wholesale Lending Broker Agreement ("Broker Agreement") with MLS, a California corporation with its principal place of business in Solana Beach, California. (Pl.'s stmt. of facts at ¶ 1; MLS counter-stmt. at ¶ 1).

Myles Hubers signed the Broker Agreement as the President of MLS. (Pl.'s Mot. Sum. J. Ex. A). Myles Hubers claims that at all relevant times he was a citizen and resident of California and that, other than signing the Broker Agreement, he has had no contacts with the state of Michigan. (Hubers Ex. A at ¶ 4).

Michelle Hubers was listed as MLS's Vice President, but she did not sign the Broker Agreement. (Pl.'s Mot. Sum. J. Ex. A.) Michelle Hubers claims that at all relevant times she was a citizen and resident of California, and did not have any contacts with the state of Michigan. (Hubers Ex. B. at ¶ 4).

The Hubers state that they had no personal involvement in originating, preparing, or submitting any materials to Flagstar regarding the loans that are the subject of this lawsuit. (Hubers Ex. A & B at ¶ 5).

Flagstar alleges that Myles and Michelle Hubers were the principals and co-owners of MLS, and that MLS was the alter ego of the Hubers. (Pl.'s Response to Hubers at 1). Flagstar claims that the Hubers operated a large number of real estate businesses, several of which had the same address as MLS. (Pl.'s Response to Hubers at 3). Additionally, MLS allegedly advertised

3

its services on an Internet page which stated that MLS "is a comprehensive mortgage-lending conglomorate offering national residential and commercial mortgage solutions through its various affiliates." (Pl.'s Response to Hubers Ex. B).

William Predebon alleges that at all relevant times he was a citizen and resident of Arizona. (Predebon Ex. A at ¶ 2). Predebon claims that he worked as an independent contractor and loan officer for AMD Mortgage, an affiliate of MLS, located in Arizona. (Predebon Ex. A at ¶ 1). Predebon did not sign the Broker Agreement.

Predebon claims that he never knowingly had any contacts with the state of Michigan. (Predebon Ex. A at ¶ 5 & 6). Flagstar counters that Predebon knowingly prepared and participated in submitting fraudulent loan origination documents to Flagstar. (Pl.'s Response to Predebon at p. 2).

Broker Agreement

Under the Broker Agreement, MLS agreed to review and submit prospective mortgage-loan packages to Flagstar for consideration, possible approval, and funding of residential mortgages. (Pl.'s Mot. Sum. J. Ex. A).

The Broker Agreement contains an indemnification provision stating that MLS will indemnify Flagstar for "any and all losses, liabilities, claims, damages, or costs of any nature, including without limitation attorney's fees and costs, and actions suffered or incurred by Flagstar which arise out of, result from, or relate to" MLS' breach of the Broker Agreement. (Pl.'s Mot. Sum. J. Ex. A at ¶ 4.1).

The Broker Agreement also contains a repurchase clause which provides:

> Seller agrees that upon written request Seller shall immediately

repurchase, at the Repurchase Price, any Mortgage Loan sold to Flagstar pursuant to this Agreement for any of the following reasons:

* * *

(b)    Flagstar reveals any evidence of fraud in the origination and closing of the Mortgage Loan by i.) the Seller or its employees, directors, officers, agents and independent contractors (including without limitation sellers or brokers of the Seller); or ii.) the Borrower.

* * *

(d)    Seller fails to observe or perform or breaches in any material respect any of the representations, warranties or agreements contained in this Agreement, the Guide, or Agency guidelines with respect to a particular Mortgage Loan.

* * *

(f)    Flagstar is required to repurchase said Mortgage Loan from Fannie Mae, Freddie Mac, or any other third party investor for any reason involving the origination or closing of the Mortgage Loan.

(Pl.'s Mot. Sum. J. Ex. A at ¶ 5.1).

Additionally, the Broker Agreement contains a forum-selection clause. Section 7.3 of the Broker Agreement, titled "Governing Law" states:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan and any applicable federal laws. Each of the parties irrevocably submits to personal jurisdiction in the state court located in Oakland County, Michigan, or the United States District Court for the Eastern District of Michigan over any action, suit, or proceeding to enforce or defend any right under this Agreement or otherwise arising from any transaction existing in connection with this Agreement . . . .

(Pl.'s Mot. Sum. J. Ex. A at 7.3).

<u>The Loans At Issue</u>

According to Flagstar's complaint, from January 5, 2006 to July 3, 2007, MLS submitted six mortgage-loan packages to Flagstar for funding. (Pl.'s Cmpl.¶ 10). There are four loans at issue in the present case: the Ko and Vu loans for properties in California, the Blaylock loan for

property in Arizona, and the Bakalov loan for property in Nevada.  (Pl.'s Comp. ¶ 32-35).

Flagstar's motion for summary judgment does not address the Bakalov loan.

Ko Loan

MLS presented Flagstar with a loan package for first and second mortgages for borrower

Carolyn Ko to purchase property in La Quinta, California.  (Pl.'s stmt. of facts at ¶ 11).  On

January 10, 2006, Flagstar funded both mortgages.  (Pl.'s stmt. of facts at ¶ 11).  Flagstar retained

the second mortgage but sold the first mortgage to JP Morgan Chase Bank ("JP Morgan").  (Pl.'s

stmt. of facts at ¶ 11.)

In the loan application, Carolyn Ko failed to disclose that she and her husband owned two

other properties in La Quinta and that those properties had loans totaling over one million

dollars.  (Pl.'s stmt. of facts at ¶ 13).

Carolyn Ko defaulted on the first mortgage, and JP Morgan foreclosed, wiping out

Flagstar's second mortgage.   (Pl.'s stmt. of facts at ¶ 12).

Flagstar made a written repurchase demand to MLS, but MLS has not repurchased the Ko

loan.  (Pl.'s Mot. Sum. J. Ex. B at ¶ 6(e)).

Flagstar claims that as of April 15, 2010, its damages for the Ko loan are $551,968.89.

(Pl.'s stmt. of facts at ¶ 15).

Vu Loan

MLS presented Flagstar with a loan package for a second mortgage for borrower Thuy Vu

for property in Santa Ana, California.  (Pl.'s Mot. Sum. J. Ex. B at ¶ 8(a)).  On April 23, 2006,

Flagstar funded the second mortgage. (Pl.'s Mot. Sum. J. Ex. B at ¶ 8(a)).

In her loan application, Thuy Vu claimed that she was the owner of a restaurant, when in

fact, she was not.  (Pl.'s Mot. Sum. J. Ex. B at ¶ 8(c)).

In July 2008, the first mortgage was foreclosed, thereby extinguishing Flagstar's second mortgage for $333,371.46.  (Pl.'s stmt. of facts at ¶ 25 & 26).

Flagstar made a written repurchase demand to MLS to repurchase the Vu loan, but MLS has not repurchased the loan.  (Pl.'s Mot. Sum. J. Ex. B at ¶ 8(e)).

Flagstar claims that as of April 15, 2010, its damages for the Vu loan are $412,743.50. (Pl.'s stmt. of facts at ¶ 28).

Blaylock Loan

MLS presented Flagstar with a loan package for borrowers Adam and Tamera Blaylock to purchase property in Chandler, Arizona.  (Pl.'s Mot. Sum. J. Ex. B at ¶ 7(a)).   On July 3, 2007, Flagstar funded the mortgage.  (Pl.'s Mot. Sum. J. Ex. B at ¶8(a)).

At closing, the Blaylocks signed a HUD Settlement Statement which stated that they were paying $2,532.50 at closing.  (Pl.'s Mot. Sum. J. Ex. B at ¶ 7(b)).  Flagstar claims that, in reality, the Blaylocks only paid $895, and that they used a fictitious gift letter to represent the balance of the required closing funds.  (Pl.'s stmt. of facts at ¶ 17).

Flagstar sold the Blaylock mortgage to Fannie Mae.  Soon after, however, the mortgage insurer for the Blaylock mortgage cancelled the insurance policy, making the loan ineligible for retention by Fannie Mae.  (Pl.'s Mot. Sum. J. Ex. B at ¶ 7(c)).  Fannie Mae demanded that Flagstar repurchase the loan, which Flagstar did.  (Pl.'s Mot. Sum. J. Ex. B at ¶ 7(d)).

Flagstar, in turn, made a written demand to MLS to repurchase the Blaylock loan, which MLS has not done.  (Pl.'s stmt. of facts at ¶ 20).

Flagstar claims that as of April 15, 2010, its damages for the Blaylock loan are

$135,792.29.  (Pl.'s stmt. of facts at ¶ 21).

Bakalov Loans

Flagstar alleges that in June, 2007, it funded a first and second mortgage for Alexander

Bakalov for property in Las Vegas, Nevada.  (Pl.'s Comp. ¶ 33).  According to Flagstar, the

Bakalov loan package contained material misrepresentations concerning the value of the

borrower's assets.  (Pl.'s Comp. ¶ 33).  The Bakalov loans went into default within six months of

closing, and Flagstar extinguished the second Bakalov loan in its entirety.  (Pl.'s Comp. ¶ 33).

Flagstar's motion for summary judgment does not make any reference to the Bakalov loans.

## ANALYSIS

I.        Flagstar's Motion For Summary Judgment[1]

        A.      Standard Of Review

Summary judgment is proper where "there is no genuine issue as to any material fact" and

where the moving party is "entitled to judgment as a matter of law."  FED.R.CIV.P. 56(c)(2).  The

party seeking summary judgment has the initial burden of informing the district court of the basis

for its motion and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate

the absence of a genuine issue of material fact.  *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).

The burden then shifts to the nonmoving party who "must set forth specific facts showing that

there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)

(quoting FED. R. CIV. P. 56(e)).  In deciding a motion for summary judgment, a court must view

---

[1]Because Flagstar's motion for summary judgment does not raise any claims regarding
the Bakalov loans, the Court will construe it as a motion for partial summary judgment.

the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

B.    <u>Breach Of Broker Agreement Regarding Ko And Vu Mortgages</u>

Flagstar argues that MLS breached the Broker Agreement by failing to repurchase the mortgage loans for the Ko, Vu, and Blaylock mortgages. As noted above, the repurchase provision of the Agreement states:

> Repurchase of Mortgage Loans by Seller. Seller agrees that upon written request Seller shall immediately repurchase, at the Repurchase Price, any Mortgage Loan sold to Flagstar pursuant to this Agreement for any of the following reasons:
>
>                * * *
>
> (b)    Flagstar reveals any evidence of fraud in the origination and closing of the Mortgage Loan by i.) the Seller or its employees, directors, officers, agents and independent contractors (including without limitation sellers or brokers of the Seller); or ii.) the Borrower.
>
>                * * *
>
> (d)    Seller fails to observe or perform or breaches in any material respect any of the representations, warranties or agreements contained in this Agreement, the Guide, or Agency gidelines with respect to a particular Mortgage Loan.
>
>                * * *
>
> (f)    Flagstar is required to repurchase said Mortgage Loan from Fannie Mae, Freddie Mac, or any other third party investor for any reason involving the origination or closing of the Mortgage Loan.

(Pl.'s Mot. Sum. J. Ex. A at ¶ 5.1).

The term "Mortgage Loan" is a defined term and only applies to first mortgages:

> **Mortgage Loan** means a loan secured by a *first lien* on a one to four family dwelling which is the subject of this Agreement, evidenced by a Note and secured by a Mortgage, and including the Mortgage Loan Documents and all other instruments evidencing a Borrower's indebtedness.

(Pl.'s Mot. Sum. J. Ex. A at Art I, p. 2) (emphasis added).

Because the repurchase provision uses the term "Mortgage Loan," and because that term is limited to loans secured by a *first lien*, the repurchase provision does not apply to second mortgages.

Here, Flagstar seeks summary judgment on claims arising from the Ko and Vu mortgages. Flagstar acknowledges, however, that both mortgages are second mortgages. (Pl.'s Br. at 5 & 3). Thus, the repurchase clause of the Broker Agreement does not apply.

Accordingly, the Court shall DENY Flagstar's motion for summary judgment with respect to the Ko and Vu mortgages.

C.    Breach Of Broker Agreement Regarding Blaylock Mortgage

Flagstar also seeks summary judgment on its claim regarding the Blaylock mortgage. Unlike the Ko and Vu mortgages, this was a first mortgage.

MLS maintains that Flagstar is not entitled to summary judgment on this claim, arguing that Flagstar has not produced "any competent evidence to establish that MLS breached the Broker Agreement." (MLS' Br. at 8). MLS further argues that Flagstar has failed to produce evidence of their damages.

In order to demonstrate that MLS breached the Broker Agreement, Flagstar attached several exhibits to its motion for summary judgment.

Plaintiff's Exhibit B is the affidavit of Angela Wright-Mitchell, a Vice President at Flagstar Bank. In the affidavit, Wright-Mitchell testified that she has "personal knowledge of the facts," and is familiar with Flagstar's books and records as they pertain to the transactions underlying the lawsuit and Flagstar's financial losses. (Pl.'s Mot. Sum. J. Ex. B at ¶ 3 & 4). She

also testified that the mortgage insurer for the Blaylock mortgage "cancelled the insurance policy, rendering the mortgage loan ineligible for retention by Fannie Mae. Fannie Mae then demanded that Flagstar repurchase the mortgage loan, which it did." (Pl.'s Mot. Sum. J. Ex. B at ¶ 7(c) & (d)).

Flagstar attached the letter dated July 25, 2008 from the mortgage insurer, Genworth Financial, cancelling the insurance policy. (Pl.'s Mot. Sum. J. Ex. H). The letter included two enclosures, a copy of a remittance check from Genworth to the Blaylocks, and a transcript of an interview with Tamera Blaylock. Flagstar also attached Fannie Mae's demand for repurchase of the Blaylock loan. (Pl.'s Mot. Sum. J. Ex. I).

MLS raises a number of objections to these exhibits. First, it objects to Wright-Mitchell's affidavit under Federal Rules of Evidence 901, 801, 802, 601, and 1002. The Court overrules all of MLS's objections to the Wright-Mitchell affidavit, because the notarized affidavit is supported by Wright-Mitchell's personal knowledge, is not hearsay, and does not seek to prove the contents of a writing.

MLS also objects to the Payoff Demand Statement attached to the Wright-Mitchell affidavit on the grounds that it lacks foundation, lacks authentication, and is hearsay. MLS further objects to the Genworth letter and enclosures and Fannie Mae's demand for repurchase, arguing that they are inadmissible under Rules 901, 601, 801, 802, and 1002. Flagstar counters that the documents are admissible under the "business-records exception."

Rule 803(6) provides:

> **Records of regularly conducted activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from

information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, *all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), 902(12)*, or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

FED. R. EVID. 803(6) (emphasis added).

Rule 803(6) requires the custodian or other qualified witness to testify that the document meets the requirements of the rule. *See Clifton v. Gusto Records, Inc.*, 852 F.2d 1287, *5 (6th. Cir. 1988) (unpublished). Flagstar has failed to offer a supporting affidavit by the custodian or a qualified witness, and has failed to submit a certificate of authentication under Rule 902 (11). Thus, the documents do not meet the business-records exception to the hearsay doctrine.

Wright-Mitchell's affidavit, however, is sufficient to demonstrate that MLS breached the Broker Agreement. Wright-Mitchell testified:

> b. Subsequent to the closing, the mortgage insurer discovered that . . . [the borrowers] used a fictitious gift letter. . . .
> c. The mortgage insurer cancelled the insurance policy, rendering the mortgage loan ineligible for retention by Fannie Mae.
> d. Fannie Mae demanded that Flagstar repurchase the mortgage loan, which it did.
> e. Flagstar then demanded that MLS reimburse it for its loss; however, MLS refused.

(Pl.'s Mot. Sum. J. Ex. B at ¶ 7(d) & (e)). MLS has not offered any evidence to refute Wright-Mitchell's affidavit.

The repurchase clause of the Broker Agreement provides that the seller, MLS, will

12

repurchase the loan for the purchase price if:

> (f) Flagstar is required to repurchase said Mortgage Loan from Fannie Mae, Freddie Mac, or any other third pary investor for any reason involving the origination of closing of the Mortgage Loan.

(Pl.'s Mot. Sum. J. Ex. A at ¶ 5.1).

MLS has failed to repurchase the loan. Accordingly, the Court finds that MLS breached the Broker Agreement as to the Blaylock mortgage, and the Court shall GRANT Flagstar's motion for summary judgment on this issue.

### D.    Damages On Blaylock Mortgage

Flagstar maintains that its loss on the Blaylock mortgage is "fixed and certain." It claims that its loss with interest through April 15, 2010 is $135,792.29. This figure is supported by Wright-Mitchell's affidavit. (Pl.'s Mot. Sum. J. Ex. B at ¶ 7(g)).

MLS counters that this amount may include fees which are not required to be paid under the Broker Agreement. MLS specifically points to a Loss Reimbursement Statement which was enclosed in Fannie Mae's demand for repurchase (Pl.'s Mot. Sum. J. Ex. I), and a line for "late charges" which appears on Flagstar's Payoff Demand. (Pl.'s Mot. Sum. J. Ex. B).

MLS has argued persuasively that both documents are inadmissible in their current form. Yet, now, MLS is relying on the same documents to show a genuine issue of material fact.

Because there has not yet been formal discovery in this case, the Court will exercise its discretion and DENY without prejudice Flagstar's motion with regard to the damages from the Blaylock mortgage. *See* Fed. R. Civ. P. 56 advisory committee's note to 2007 amendments.

Accordingly, the case will proceed on Flagstar's claims against MLS regarding the Bakalov, Ko and Vu mortgages, and on the issue of damages as to the Blaylock mortgage.

II.     Individual Defendants' Motions To Dismiss For Lack Of Jursidiction

The Hubers and Prebedon have brought separate motions to dismiss for lack of personal jurisdiction.  Both motions assert that they were made in accordance with Federal Rule of Civil Procedure 12(b)(6).  Because they are motions to dismiss for lack of jurisdiction, however, the Court will construe them as a being made pursuant to Rule 12(b)(2).

When deciding such motions before trial, a federal district court may "determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion."  *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

When a court rules on the motion without conducting an evidentiary hearing, "the court must consider the pleadings and affidavits in the light most favorable to the plaintiff.  To defeat such a motion, the plaintiff need only make a prima facie showing of jurisdiction.  Furthermore, a court does not weigh the controverting assertions of the party seeking dismissal."  *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)).

The Supreme Court has noted that "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him . . . .  Each defendant's contacts with the forum State must be assessed individually."  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n. 13 (1984).

A court has personal jurisdiction over an individual defendant "if the defendant is amenable to service of process under the state's long-arm statute, and if the exercise of personal jurisdiction would not deny the defendant's due process."  *Michigan Coalition of Radioactive*

*Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992).

Flagstar argues that the Hubers are subject to personal jurisdiction under a theory of alter-ego liability, which the Court addresses below in Section C.  Because the Court finds that the Hubers are subject to personal jurisdiction under the alter-ego theory, it need not address whether the Hubers would be subject to personal jurisdiction under the Michigan long-arm statute and under the Fourteenth Amendment.

     A.    <u>Does The Michigan Long-Arm Statute Provide Personal Jurisdiction For Predebon?</u>

Flagstar maintains that the Michigan long-arm statute is coextensive with the constitutional limitations of due process, and therefore, the two inquiries "merge into one."  (Pl.'s Response to Hubers at 6; Pl.'s Response to Prebedon at 3) (citing *Griepentrog*, 954 F.2d at 1176).  After *Griepentrog* was decided, the Michigan Supreme Court clarified that the inquiries merge only after "the acts or status of a defendant first fit within a long-arm statute provision." *Green v. Wilson*, 455 Mich. 342, 350 (1997); *Finnsugar Bioproducts, Inc., v. Monitor Sugar Company*, 2002 WL 31758644 (E.D. Mich. Sep. 30, 2002).  The Court must therefore determine whether Predebon is subject to the limited personal jurisdiction provided for by Michigan's long-arm statute.

The Michigan long-arm statute states:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

(1) The transaction of any business within the state.
(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.
(3) The ownership, use, or possession of real or tangible personal property situated within the state.
(4) Contracting to insure a person, property, or risk located within this state at the time of contracting.
(5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.
(6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.
(7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

MICH. COMP. LAWS § 600.705.

The Sixth Circuit has recently reiterated that the "arising out of" requirement "is met if the cause of action was 'made possible' by or 'lies in the wake of' the defendant's contacts with the forum state." *Citizen Bank v. Parnes*, 2010 WL 1753296 (6th Cir. 2010) (unpublished).

Flagstar asserts that Predebon is subject to the Michigan long-arm statute under subsection (2) ("The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort."). Flagstar further asserts that "there is no doubt that faxing fraudulent loan origination documents to Michigan is within the realm of proximate causation of mortgage fraud in Michigan and that mortgage fraud is a tort." (Flagstar's response to Predebon's motion to dismiss at 4). Flagstar has not submitted any affidavit asserting that Predebon faxed the fraudulent loan origination documents to Michigan. Pedebon, however, has admitted that he originated the Blaylock Loan. (Predebon's reply Ex. A at ¶ 3). The origination of the Blaylock loan satisfies subsection (2) of the Michigan long-arm statute. Therefore, the

Court must determine whether the exercise of personal jurisdiction would comport with due process.

B.    <u>Does The Exercise Of Jurisdiction Over Predebon Comply With Due Process Requirements?</u>

The Sixth Circuit has stated a three-part test to determine whether the exercise of personal jurisdiction is consistent with the requirements of due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

The Court begins with the purposeful-availment analysis.

The Supreme Court has stated:

> This purposeful availment requirement assures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State. Thus, where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and the residents of the forum, he manifestly has availed himself of the privilege of conducting business there . . .

*Burger King Corp., v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original) (citations omitted).

In *McGee v. International Life Insurance Co.*, 355 U.S. 220 (1957) the Supreme Court held that the issuance of a single life-insurance policy to a California resident was sufficient to

justify the exercise of jurisdiction over a party located in Texas. Likewise, in *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996), the Sixth Circuit found that Ohio had personal jurisdiction over a Texas resident who purchased a subscription from CompuServe and who sent computer software over the internet to the CompuServe system in Ohio.

Flagstar has failed to allege or present any evidence that Predebon faxed the the origination document to Flagstar in Michigan. Rather, Flagstar states, "Whether or not Predebon was the individual who operated the fax machine, he clearly knew . . . that [MLS] would forward his documents . . . to a lender like Flagstar . . . ." (Pl.'s Response to Predebon at p.2).

While Predebon may have known that the loan origination documents would be faxed somewhere, Flagstar has failed to show that he purposefully availed himself of the privilege of conducting business in Michigan. Not only has Flagstar failed to allege that Predebon, himself, sent the forms, they also failed to allege that he knew that the forms would be sent *to Michigan*. Accordingly, the Court finds that the exercise of personal jurisdiction over Predebon does not satisfy the purposeful-availment test. The Court shall GRANT Predebon's Motion to Dismiss.

C.    Does The Court Have Personal Jurisdiction Over The Hubers Based On The
      Alter-Ego Doctrine?

Flagstar alleges that the Hubers used MLS as their alter ego, and are therefore personally liable for Flagstar's breach of contract claim.

The Sixth Circuit has stated:

> Federal courts have consistently acknowledged that it is compatible
> with due process for a court to exercise personal jurisdiction over an
> individual or a corporation that would not ordinarily be subject to
> personal jurisdiction in that court when the individual or corporation
> is an alter ego or successor of a corporation that would be subject to

18

personal jurisdiction in that court.

*Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008).

In applying the principles of the alter-ego theory of personal jurisdiction, a district court should look to the law of the forum state. *See, e.g., Estate of Thomson,* 545 F.3d at 362.

In applying Michigan law, the Sixth Circuit has stated:

> A court may find an identity between business entities and pierce the corporate veil upon proof of three elements: first, the corporate entity must be a mere instrumentality of another entity or individual; second, the corporate entity must be used to commit a fraud or wrong; third, there must have been an unjust loss or injury to the plaintiff.

*Bodenhamer Bldg. Corp. v. Architectural Research Corp.*, 883 F.2d 109, 112 (6th Cir. 1989).

"In making this determination, courts consider several factors, including the sufficiency of the capitalization of the corporation, the maintenance of separate books, the degree of separation of the corporation's and shareholders' finances, any disregard of corporate formalities, the existence of the corporation as a sham." *Xerox Corp. v. N.W. Coughlin & Co.,* 2009 WL 261530 at * 5 (E.D. Mich. 2009). Further, "[t]he propriety of piercing the corporate veil is highly dependant on the equities of the situation, and the inquiry tends to be intensively fact-driven."

Here, Flagstar asserts that Myles and Michelle Hubers are co-owners of MLS. (Pl.'s Cmpl at ¶ 15). Additionally, Flagstar alleges the following facts: "MLS is undercapitalized;" MLS was "used as a conduit for the [Hubers'] personal business; the financial affairs of the corporate entity and the principles were intermingled; the corporate formalities were not observed; [MLS] was undercapitalized; and/or the corporate entity was created and operated

pursuant to a tortious scheme . . ."  (Pl.'s Cmpl. at ¶ 14 & 15).

As noted above, in ruling on a motion to dismiss when there is no evidentiary hearing, this Court does not weigh the controverting assertions of the party seeking dismissal.  *Dean*, 134 F.3d at 1272.  Additionally, the Court views the pleading and affidavits in the light most favorable to the plaintiff.  *Estate of Thompson* 545 F.3d at 360 (6th Cir. 2008).  Under this standard, the Court finds that Flagstar has alleged sufficient facts to support the exercise of personal jurisdiction over the Hubers based on Flagstar's alter-ego theory.[2]

D.  Hubers' Motion To Transfer Venue For Forum Non Conveniens:

The Hubers alternatively ask the Court to transfer venue to the Southern District of California pursuant to 28 U.S.C. § 1404(a).  Flagstar opposes transferring the case.

Section 1404(a) states: "For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).

Because personal jurisdiction over the Hubers is predicated on alter-ego liability, for jurisdictional purposes, they are parties to the Broker Agreement's forum-selection clause.  (Pl.'s Mot. Sum. J. Ex. A at 7.3).

When determining whether to transfer venue in cases which involve a forum-selection clause, the Supreme Court has stated that the forum-selection clause should not receive "dispositive consideration nor no consideration, but rather the consideration for which Congress

_____

[2]Because Flagstar's complaint alleges sufficient facts to support alter-ego liability, the Court need not address the Hubers' evidentiary objections to Flagstar's exhibits (Doc. No. 18).

20

provided in § 1404(a)." *Stewart Organization, Inc. v. Ricoh*, 487 U.S. 22, 31 (1988).

In *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991), the Sixth Circuit stated that the forum-selection clause should figure centrally into a district court's calculus, but a district court should also consider "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Id.*

The Hubers argue that California is a more convenient forum for this action than Michigan. The Hubers note that they are residents of California, and that their potential witnesses are located in California, Nevada, and Arizona.

Flagstar counters that all of its witnesses and records are in Michigan. Additionally, and crucially, the forum-selection clause demonstrates that Flagstar and MLS expected and intended the case to be litigated in Michigan, and that Michigan law would apply.

Based on all of these factors, the Court finds that Michigan is a more convenient forum than California. Accordingly, the Court shall DENY the Hubers' motion to transfer venue.

## CONCLUSION & ORDER

For the reasons stated above, the Court GRANTS in part and DENIES in part Flagstar's Motion for Summary Judgment; the Court DENIES the Hubers' Motion to Dismiss or Transfer Venue; and the Court GRANTS Predebon's Motion to Dismiss. Accordingly, Flagstar's claims against MLS will proceed with respect to both liability and damages for the Ko, Vu, and Bakalov loans. Because the Court has ruled that MLS is liable with respect to the Blaylock loan,

Flagstar's claim against MLS for the Blaylock loan will proceed as to damages only. Flagstar's claims against the Hubers will proceed with respect to both liability and damages for the Ko, Vu, Blaylock, and Bakalov loans.

IT IS SO ORDERED.

s/Sean F. Cox_____
Sean F. Cox
United States District Judge

Dated: September 28, 2010

I hereby certify that on September 28, 2010, a copy of the foregoing document was served upon counsel of record by electronic means and upon William Predebon via First Class Mail at the address below:

William Walter Predebon
2005 West Nadine Way
Phoenix, AZ 85085

s/Jennifer Hernandez_____
Case Manager